# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY DANIEL,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | Case No.  1:21-cv-01527-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 17, 18, 19, 20) |

## I.

## INTRODUCTION

Plaintiff Timothy Daniel ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Social Security benefits pursuant to Title II of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[1]  For the reasons set forth below, Plaintiff's appeal shall be denied.

---

[1]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 9, 11, 12, 13, 14.)

## II.

## BACKGROUND[2]

Plaintiff filed the instant application for Social Security benefits under Title II on February 6, 2019, alleging disability beginning March 11, 2018.  (See Admin. Rec. ("AR") 21, 175–81, 186–91, ECF Nos. 15-1, 15-2.)  Plaintiff's claim was initially denied on May 6, 2019, and denied upon reconsideration on August 29, 2019.  (AR 96–101, 103–108.)  On December 1, 2020, Plaintiff, represented by non-attorney representative Andrew S. Youngman,[3] appeared via telephonic conference, for an administrative hearing before Administrative Law Judge Debra J. Denney (the "ALJ").  (AR 35–65.)  Vocational expert ("VE") Daniel B. Best also testified at the hearing.  Following the hearing, Plaintiff was permitted an additional 30 days to submit a post-hearing brief (AR 280–81 (Ex. 14E)) and supplemental records from Visalia Health Center AR 1094–1121 (Ex. 20F)).  (See AR 21.)  On January 19, 2021, the ALJ issued a decision denying benefits.  (AR 18–34.)  On August 17, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (AR 1–7.)

Plaintiff initiated the instant action in federal court on October 15, 2021, and seeks judicial review of the denial of his applications for benefits.  (ECF No. 1.)  The Commissioner lodged the administrative record on March 14, 2022.  (ECF No. 15.)  On April 25, 2022, Plaintiff filed a motion for summary judgment.  (ECF Nos. 17, 18.)  On June 8, 2022, Defendant filed a brief in opposition.  (ECF No. 19.)  Plaintiff filed a reply to Defendant's briefing on June 15, 2022.  (ECF No. 18.)  The matter is deemed submitted.

## III.

## LEGAL STANDARD

### A.     The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must

---

[2] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

[3] At the time of the hearing, Plaintiff was represented by both non-attorney representative Andrew S. Youngman and attorney Marielle Lopez, who also appeared at the December 1, 2020 hearing.  Plaintiff is currently represented by attorneys Rachel Slocombe and Jennifer L. Dunn, PHV, in the instant appeal.  (See ECF No. 18.)

show he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[5] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[5] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only disability benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[6]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' "  Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by

---

[6] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

4

the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

Further, the Court's review of the Commissioner's decision is a limited one; the Court must find

the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. §

405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant

evidence which, considering the record as a whole, a reasonable person might accept as adequate

to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002)

(quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also

Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to

the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is

not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a

scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v.

CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and

citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the

ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally

falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396,

409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm

simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153,

1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).

Nor may the Court affirm the ALJ on a ground upon which she did not rely; rather, the Court may

review only the reasons stated by the ALJ in her decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th

Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not

this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment

for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is

the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart,

400 F.3d 676, 679 (9th Cir. 2005)).

///

## IV.

## THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, January 19, 2021 (AR 23–29):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2023, and Plaintiff has not engaged in substantial gainful activity since March 11, 2018, the alleged onset date.  (AR 23 (citing 20 C.F.R. §§ 404.1571 et seq.).)

At step two, the ALJ determined Plaintiff has the following severe impairments: degenerative disc disease, osteoarthritis of the hip, and morbid obesity.  (Id. (citing 20 C.F.R. § 404.1520(c)).)

At step three, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 24–25 (citing 20 C.F.R. §§ 404.1520(d); 404.1525; 404.1526; SSR 02-1p, available at 2002 WL 34686281 (Sept. 12, 2002)).)  This included the ALJ's consideration of Listings 14.09 (immune-adult), 1.04 (nerve root compression, spinal arachnoiditis, lumbar spinal stenosis), and 1.00 (back disorder).  (Id.)

Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform:

> **light work as defined in 20 CFR 404.1567(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand and/or walk for 4 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.  The claimant can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs.  The claimant can never [climb] ladders, ropes, or scaffolds.  The claimant cannot work at unprotected heights or around fast moving machinery.  The claimant has no manipulative limitations.**

(AR 25–28 (citing 20 C.F.R. §§ 404.1529; 404.1520c; 404.1520b(c); 416.920bc; SSR 16-3p, available at 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 28 (citing 20 C.F.R. § 404.1565).)

At step five, the ALJ noted Plaintiff was born on December 17, 1967, and was 50 years

old (which is defined as an individual closely approaching advanced age) on the alleged disability onset date; Plaintiff has at least a high school education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 28 (citing 20 C.F.R. §§ 404.1563; 404.1564; SSR 82-41, <u>available at</u> 1982 WL 31389 (Jan. 1, 1982); 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as:

- <u>Cashier II</u> (Dictionary of Occupational Titles ("DOT") 211.462-010), a light work position with a specific vocational preparation ("SVP") level of 2, and approximately 560,000 jobs available in the national economy, reduced by 75–80%;

- <u>Electronics Worker</u> (DOT 726.687-010), a light work position with an SVP level of 2, and approximately 32,000 jobs available in the national economy; and

- <u>Small Products Assembler I</u> (DOT 706.684-022), a light work position with an SVP level of 2, and approximately 110,000 jobs available in the national economy, reduced by 50%.

(AR 28–29 (citing 20 C.F.R. §§ 404.1569; 404.1569(a); 20 C.F.R. Part 404, Subpart P, Appendix 2; SSR 83-11, <u>available at</u> 1983 WL 31252 (Jan. 1, 1983); SSR 83-12, <u>available at</u> 1983 WL 31253 (Jan. 1, 1983); SSR 83-14, <u>available at</u> 1983 WL 31254 (Jan. 1, 1983); SSR 85-15, <u>available at</u> 1985 WL 56857 (Jan. 1, 1985)).)  With respect to the identified jobs, the ALJ noted the VE's testimony was consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony was based on his professional experience.  (AR 29.)

Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social Security Act, from March 11, 2018 (the alleged date of onset) through January 19, 2021 (the date of decision).  (<u>Id.</u> (citing 20 C.F.R. § 404.1520(g)).)

**V.**

**DISCUSSION**

Plaintiff asserts four challenges on appeal: (1) the ALJ provided an inadequate RFC by failing to properly account for Plaintiff's pain; (2) the ALJ erred by rejecting the State Agency

1    medical consultant findings without adequate articulation; (3) the ALJ erred in failing to identify

2    and resolve apparent conflicts between the limitations in Plaintiff's residual capacity pursuant to

3    SSR 00-4p; and (4) the appointment of Andrew Saul as Commissioner of the Social Security

4    Administration, removable only for cause violates separation of powers, rendering the decision of

5    the ALJ constitutionally defective because her authority is derived from Mr. Saul.  (ECF No. 18

6    at 2, 8–22.)  The Court shall address each argument in turn.

**A.    Whether the ALJ Properly Evaluated Plaintiff's Pain Testimony**

8    Plaintiff challenges the ALJ's evaluation of his subjective pain testimony, and argues the

9    RFC is not supported by substantial evidence because the ALJ failed to properly account for

10   Plaintiff's pain.  (ECF No. 18 at 8–12.)

1.    Legal Standard[7]

12   The ALJ is responsible for determining credibility,[8] resolving conflicts in medical

13   testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of

14   pain or other symptoms are not conclusive evidence of a physical or mental impairment or

15   disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not

16   required to believe every allegation of disabling pain or other non-exertional impairment.").

17   Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony

18   regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014

19   (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce

20   objective medical evidence of an impairment that could reasonably be expected to produce some

21   degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.

22   If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject

23   the claimant's testimony about the severity of those symptoms only by providing specific, clear,

[7]   Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in the Ninth Circuit.  (ECF No. 19 at 23 n.5.)

[8] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, at *1-2.

and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

> If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive. The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the Secretary.

Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at 1277.

Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence).

Nevertheless, the medical evidence "is still a relevant factor in determining the severity of [the] claimant's pain and its disabling effects." Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)). Indeed, Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard. See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir.

2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); see also Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be  sufficient." (emphasis in original)).

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing." Thomas, 278 F.3d at 959.

2. Plaintiff's Pain Testimony

Plaintiff alleges his lower back pain keeps him from being able to work.  (AR 211.) However, at the hearing, Plaintiff clarified that his medical conditions were not the reason why his employment ended, but that he was terminated from his last job on the alleged disability onset date because he had "an outburst" at work.  (AR 45–49.)  Thereafter, Plaintiff applied and

interviewed for jobs but did not receive callbacks.  (AR 48–49.)  Plaintiff also testified that his back injury was an ongoing condition and that he experienced back pain for an unspecified length of time before his employment ended.  (AR 46, 49.)

Plaintiff testified that, because of his back pain, he could lift only five pounds and "barely" bend and stoop, and would "get very frustrated really quickly and tired."  (AR 42.)  He could stand at the stove or in the shower for "maybe" five minutes, or ten minutes, at most.  (AR 52.)  Plaintiff testified that he needs to use a cane "quite regularly," but admitted that he does not have a prescription for a cane, has not been prescribed a handicapped parking permit, and has not inquired about receiving an assistive device or permit from his doctors.  (AR 43–44, 51.)  Plaintiff testified that he lives with his wife and two adult children, and is the only person in his household with a driver's license.  (AR 43.)  Plaintiff regularly drives his wife and children to and from work.  (AR 45.)  Plaintiff testified that he would, "from time to time," rely on his wife to help him put on his shoes or get dressed.  (AR 50, 53.)  He can help with some cooking, but his wife does most of the household chores.  Plaintiff stated that on a typical day he would take his medication, sit down, watch television, and read, but that he experiences pain down his legs and numbness in his toes.  (AR 52–53.)  Plaintiff testified that he takes ibuprofen and Gabapentin, which cause drowsiness and light-headedness, and takes blood pressure medications.   (AR 49, 54–55.)  Plaintiff testified that he tried applications of heat and a cool compress to help relieve his pain and received two epidural steroid injections, but they did not help.  (AR 55–56.)  He tried physical therapy but it did not help.  (AR 43.)  Plaintiff indicated his new doctor wants to try a pain stimulator implantation before considering surgery.  (AR 43, 50–51.)

3.    Analysis

As noted, the ALJ determined Plaintiff has the severe impairments of degenerative disc disease, osteoarthritis of the hip, and morbid obesity.  (AR 23.)  As a result, the ALJ was required to make a credibility finding as to Plaintiff's own testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, she was required to give clear and convincing reasons as to why she did not find Plaintiff's subjective contentions about his limitations to be persuasive.  Id.

### a.   Inconsistencies with the Medical Record

One reason provided by the ALJ is that Plaintiff's allegations are inconsistent with the medical and other evidence.  (AR 27.)  For example, the ALJ noted that, despite Plaintiff's allegations of inability to perform any work activities, the record often shows Plaintiff has a normal gait and station (id. (citing AR 286–93, 318–27, 1067)); walked without difficulty and had normal strength and sensation throughout in August 2019 (id. (citing AR 302–08, 725, 1067; referencing AR 304–08, 867)); had antalgic gait but largely normal strength in July 2020 (id. (referencing AR 1074)); normal gait and station with largely normal strength and sensation, despite ambulating with a cane, in October 2020 (id. (citing AR 1067)); was observed to walk on his heels and toes (AR 26 (referencing AR 845)); had normal deep tendon reflexes in his hip range of motion (id. (citing AR 346)); had normal coordination and reflexes and a stable spine (AR 27 (citing AR 1067, 1087–93)); and a normal electromyogram (EMG) in October 2018 (AR 26 (citing AR 302–08)).  The ALJ found that, at times, Plaintiff had a negative straight leg raise test with some slightly diminished lumbar range of motion (id. (citing AR 286–93)); and, while a 2019 imaging study revealed advanced degenerative disc disease in Plaintiff's lumbar spine (id. (citing AR 1063)), a 2020 imaging study showed no major changes in Plaintiff's lumbar spine as compared to the prior year (AR 27 (citing AR 1087–93)).

The ALJ's reference to the medical records to identify inconsistencies in Plaintiff's testimony constitutes a specific, clear, and convincing reason supported by substantial evidence in the record that supports the ALJ's adverse credibility determination.  Lambert, 980 F.3d at 1277; Hairston, 827 Fed. App'x at 773; Carmickle, 533 F.3d at 1160; Woods I, 2022 WL 1524772, at *10 n.4; Osenbrock, 240 F.3d at 1165–66 (affirming ALJ's reliance on normal physical examination findings as a basis for rejecting claims of disabling pain).

Plaintiff challenges the ALJ's finding that the record often demonstrates "normal gait and station," on the basis that the ALJ only cites two medical notes to support her finding.[9]

---

[9] Incidentally, as Defendant correctly notes, the ALJ noted *three* instances of gait normality: (1) July 2018 (AR 26 (citing AR 286–93,)); (2) "walked without difficulty" in August 2019 (id. (citing AR 725)); and (3) had "normal gait and station with normal strength and sensation, but was ambulating with a cane" in October 2020 (AR 27 (citing AR 1067)).

1   Moreover, Plaintiff argues one of the cited instances (from October 8, 2020) does not support the

2   ALJ's finding because it indicates Plaintiff was ambulating with a cane.  Plaintiff also appears to

3   suggest the ALJ cherry-picked the record because she failed to acknowledge instances in which

4   Plaintiff had a "slow," "antalgic," or "cane-requiring" gait.  (ECF No. 18 at 10.)

5           Plaintiff's arguments are unavailing.   Notably, Plaintiff does not address the ALJ's

6   discussion of other objective medical evidence—such as the instances of normal deep tendon

7   reflexes in Plaintiff's hip range of motion, normal coordination and reflexes, a stable spine, a

8   normal EMG, and negative straight leg raise tests—and has effectively waived argument as to the

9   issue on those findings.  Consequently, even if the ALJ erred in her finding regarding medical

10   records of a normal gait and strength, Plaintiff has not challenged the ALJ's determination that

11   his testimony remains inconsistent with the medical record as to these other objective findings,

12   and any such argument is waived.  Lewis, 236 F.3d at 517 n.13; Indep. Towers of Wash. v.

13   Wash., 350 F.3d 925, 929 (9th Cir. 2003) (stating court "will not consider any claims that were

14   not actually argued in appellant's opening brief" and will only "review … issues which are

15   argued specifically and distinctly in a party's opening brief."); see also Ruiz v. Comm'r of Soc.

16   Sec. Admin., 490 Fed. App'x. 907, 908–09 (9th Cir. 2012) (affirming ALJ's decision to deny

17   benefits and concluding that, because the ALJ listed nine rationale for rejecting the claimant's

18   testimony and the claimant challenged only one of the rationale, the ALJ's conclusion would still

19   be supported by the unchallenged rationale).

20           In addition, the Court notes the Ninth Circuit does not require an ALJ to "perform a line-

21   by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."

22   Lambert, 980 F.3d at 1277.  Thus, the ALJ was not required to identify every medical note in the

23   record discussing Plaintiff's normal gait or strength in order to support her finding that the record

24   generally reflects this.  However, the Court notes the ALJ provided a well-supported and detailed

25   summary of the medical record, which accounts for both Plaintiff's complaints of pain and

26   antalgic gait as well as his normal examinations and reports of improvement.  (See, generally, AR

27   26–27.)  Furthermore, the Court finds the ALJ's summary fairly depicts the longitudinal record,

28   which includes numerous—and well more than two—examples of Plaintiff's normal gait and

walking (see, e.g., AR 291 (July 2018); AR 849 (August 2018); AR 551 (March 2019); AR 605 (May 2019); AR 603 (July 2019); AR 725 (August 2019); AR 1010 (August 2019); AR 1046 (September 2019); AR 1008 (October 2019); AR 761 (December 2019); AR 1003 (June 2020); AR 782 (August 2020); AR 1071 (September 2020); AR 1067 (October 2020)), as well as largely normal motor strength or instances in which Plaintiff denied loss of strength (see, e.g., AR 290, 293 (July 2018); AR 296–97 (August 2018); AR 305–06 (November 2018); 611 (July 2019); 725 (August 2019); 750, 753 (July 2020); 782 (August 2020); 757 (February 2020); 1067 (October 2020)).

Plaintiff's cane arguments are also unpersuasive.  Plaintiff testified that he started using a cane at his wife's behest, but no doctor ever prescribed a cane, and no medical professional recommended any assistive walking devices or opined that Plaintiff needed any such devices to ambulate.  Nor has Plaintiff sought a handicapped parking permit.  As to Plaintiff's October 2019 argument, it appears that Plaintiff had two medical appointments that day: one of the treatment records reflects that Plaintiff could walk slowly with a cane, could move all four extremities, had normal deep reflexes, and could feel touch equally in all four extremities (AR 1026); however, the other treatment record reflects that Plaintiff had a "[n]ormal gait" and does not mention use of a cane at all (AR 1010).

Plaintiff's argument that the ALJ failed to consider his medical records documenting antalgic gait is belied by a plain review of the ALJ's decision.  (See, generally, AR 26–27.) Furthermore, Plaintiff appears to overstate the severity of his symptoms based on the antalgic gait records.  For example, while Plaintiff was observed using a cane in July 2020, it was also documented that he had largely normal motor function in his legs.  (See AR 750).  In the August 2018 treatment record relied upon by Plaintiff, the record indicates Plaintiff had an abnormal gait when his hips were examined (AR 297), but he was found to have a normal gait when he was generally examined, plus Plaintiff was able to walk on his heels and toes, and he denied gait abnormality (AR 296–97).  In treatment notes for October and November 2018, Plaintiff is observed to have an abnormal gait; however, the same notes also document that Plaintiff was able to walk on his heels and toes, and denied gait abnormality, any functional deficit, and any loss of

1    strength.  (AR 301–02, 305–06.)

2        On this record, the Court finds the ALJ reasonably interpreted the objective medical

3    evidence and substantial evidence supports the ALJ's relevant findings.

4        **b.**      **Activities of Daily Living ("ADLs")**

5        Another reason the ALJ identified was that Plaintiff's ADLs do not support his allegations

6    of debilitating symptoms.  The ALJ noted that, "even though Plaintiff alleges being able to

7    complete few activities of daily living, in 2018 he reported that he can clean his home, drive,

8    cook, bathe, and dress himself … The claimant also reported that he can help with some

9    cooking." (AR 25–26 (citing AR 35–65, 230–34, 286–93, 318–27, 1067).)  Accordingly, the ALJ

10    concluded Plaintiff's allegations as to the intensity and limiting effects of his impairments are

11    inconsistent with his ADLs.  The Ninth Circuit has held that "[e]ngaging in daily activities that

12    are incompatible with the severity of symptoms alleged can support an adverse credibility

13    determination." Ghanim, 763 F.3d at 1165; see also Molina v. Astrue, 674 F.3d 1104, 1112–13

14    (9th Cir. 2012), superseded by regulation on other grounds; Valentine, 574 F.3d at 693; Burch,

15    400 F.3d at 680 (finding the ALJ properly discounted the claimant's allegations where the

16    claimant's activities suggest higher functionality, including caring for personal needs, cooking,

17    cleaning, shopping, interacting with family, and managing her finances); Fair, 885 F.2d at 604

18    (affirming the ALJ's decision where the claimant's allegations were inconsistent with activities of

19    personal care, shopping, chores, riding public transportation, and driving).  Accordingly,

20    Plaintiff's ADLs constitute a clear and convincing reason to support the ALJ's credibility

21    determination.

22        Plaintiff takes issue with the examples of ADLs discussed by the ALJ, arguing they are

23    "paltry at best," and mischaracterize the record.  (See ECF No. 18 at 9–10.)  More specifically,

24    Plaintiff argues the ALJ failed to consider other testimony detailing greater severity of Plaintiff's

25    impairments.  For example, Plaintiff asserts he also testified that he cannot get his shoes out from

26    under the bed without his wife's help (AR 50); that he stays in the car while his wife grocery

27    shops because he cannot walk for any certain distance (id.); that a typical day involves him

28    getting up, going to the restroom, taking his medications, sitting down, and "that's basically it"

1   (AR 52); that he does not do his own yard work (id.); and that his wife helps him get dressed from

2   time to time (id.).  But this argument is unpersuasive.

3       Notably, the aforementioned testimony highlighted by Plaintiff is inconsistent with other

4   statements he has asserted, including the ones discussed by the ALJ.  For example, Plaintiff's

5   allegation that he "cannot walk for any certain distance" is inconsistent with Plaintiff's statement

6   that he would regularly use a cane, his exertion questionnaire statement that he could walk for

7   about fifteen to twenty minutes, and the acknowledgment that he would attend his doctor's

8   appointments in person (which also required walking).  (See AR 26, 43, 51–52, 233).  Plaintiff's

9   statements about needing to sit down, rather than stand, somewhat conflict with his testimony that

10  he could stand at the stove for maybe five to ten minutes.  (AR 52.)  And while Plaintiff seeks to

11  downplay the finding that he is capable of completing some ADLs, his July 2018 treatment record

12  notes that he can clean his home, drive, cook, bathe, and dress himself (AR 291), and he stated in

13  his exertion questionnaire that he could clean for anywhere from ten to twenty minutes (AR 233).

14  The Court notes that inconsistent prior statements, as seen here, may constitute a clear and

15  convincing reason in support of an adverse credibility determination, independent of the ADL

16  analysis.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (ALJ may employ ordinary

17  techniques of credibility evaluation, such as prior inconsistent statements concerning the

18  symptoms, and other testimony by the claimant that appears less than candid); Tommasetti, 533

19  F.3d at 1039–40 (finding claimant was a "vague witness" went to ordinary techniques of

20  credibility evaluation and supported the ALJ's credibility determination).  Nonetheless, here, it

21  appears the ALJ considered all of Plaintiff's testimony, resolved the inconsistencies and

22  ambiguities as she was required to do, Andrews, 53 F.3d at 1039, and reached a conclusion about

23  Plaintiff's ability to complete certain ADLs that the Court finds was reasonable.  To the extent

24  Plaintiff seeks to undermine this finding by suggesting an alternative interpretation of the

25  evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch,

26  400 F.3d at 679 (citations omitted).

27       Furthermore, even where a claimant's activities "suggest some difficulty functioning, they

28  may [still] be grounds for discrediting the claimant's testimony to the extent that they contradict

16

claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citing Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693). In Valentine v. Commissioner of Social Security Administration, for example, the ALJ determined the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities … are inconsistent with the degree of impairment he alleges." Valentine, 574 F.3d at 693. The ALJ further remarked on the claimant's ADLs, but acknowledged these activities did not suggest that the claimant could return to his old job. Id. Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the severity of his limitations were exaggerated. Id. The Ninth Circuit found the ALJ provided clear and convincing reasons to reject the claimant's subjective complaint testimony because she identified evidence that directly contradicted the claimant's claims that his PTSD was so severe that he was unable to work, including contentions about how debilitating his fatigue was. Id. Similarly here, the ALJ concluded Plaintiff "appear[s] to have some ongoing issues, but appeared to maintain some degree of functioning, including ambulation and range of motion"; therefore, the ALJ determined Plaintiff's ADLs constitute evidence that contradicts Plaintiff's allegations of a totally debilitating impairment. (AR 26–27.)

In light of the aforementioned authorities, the Court finds the ALJ's consideration of Plaintiff's ADLs constitutes a clear and convincing reason in support of his credibility determination.

**c.     Conservative Treatment**

Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints. See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).

Here, the ALJ noted Plaintiff underwent largely conservative treatment in the record. (AR 26–27 (citing, *e.g.*, AR 452, 469–575, 748–71, 1067)). This included pain medications (ibuprofen and gabapentin), physical therapy, and two steroidal injections. Plaintiff's treatment

plan also included the directions to walk daily, stay active, and lose weight.  At the hearing before the ALJ, Plaintiff testified that he was being evaluated for implantation of a spinal cord stimulator,[10] and that, if he receives no relief from the stimulator, then his last hope will be surgery.  (AR 51.)  The ALJ summarized the record regarding these treatments and concluded they were overall conservative in nature.

Plaintiff does not dispute that medications, physical therapy, diet, and exercise are all conservative treatments.  See also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); Tommasetti v. Astrue, 533 F.3d 1035, 1039–40 (9th Cir. 2008) (claimant's treatment, including physical therapy, the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation ("TENS") unit, and a lumbosacral corset, were deemed "conservative"); Brackett v. Comm'r of Soc. Sec. Admin., 468 Fed. App'x 754, 754–55 (9th Cir. 2012) (claimant's treatment plan of exercise and diet was deemed "conservative").  Instead, Plaintiff argues the ALJ's findings constitute a misrepresentation of the totality of the evidence.  (ECF No. 18 at 11–12.)  More specifically, Plaintiff maintains his treatment records reflect a natural progression to advanced treatments, which will ultimately result in surgery, and which the ALJ failed to consider.  Further, Plaintiff argues the ALJ neglected to consider how Plaintiff's more conservative treatments, such as medication and physical therapy, did not provide relief, and she failed to address Plaintiff's spinal cord stimulator and lumbar epidural steroid injections entirely.  Finally, Plaintiff argues the ALJ failed to address Plaintiff's reported side effects (i.e., drowsiness and lightheadedness) from his medications.  The Court, however, finds these arguments unavailing.

As to Plaintiff's physical therapy treatment, the ALJ accurately noted that Plaintiff "appeared to benefit from his course of physical therapy initially."  (AR 27; see also, e.g., AR 725 (stating Plaintiff reported physical therapy "failed"; however, finding Plaintiff "is doing better than 6 months ago"); AR 501 (physical therapist finding Plaintiff "has a good prognosis")).  While Plaintiff himself reported that he "tried and failed" physical therapy and his physical

---

[10] It is unclear whether Plaintiff ever underwent the procedure to have the spinal cord stimulator implanted.

1   therapist found minimal improvement, Plaintiff's provider found Plaintiff "stable," noted he had

2   overall improvement from the six months prior, noted that "conservative therapy is [the] best

3   approach for now," and advised that surgery was not recommended.  (AR 725.)  Indeed, at no

4   point does the record reflect that Plaintiff was recommended for surgery.  At most, Plaintiff

5   testified at the hearing that he intended to seek surgery "as a last resort"; however, there is no

6   indication that any medical provider believed surgery was the appropriate course of treatment for

7   Plaintiff at any time and Plaintiff has not argued that any medical provider has recommended

8   surgery.  Based on the conflicting degrees of reported success of the physical therapy, the ALJ

9   properly synthesized the evidence, Andrews, 53 F.3d at 1039, and concluded Plaintiff

10  experienced some initial improvement from physical therapy.

11       Importantly, the ALJ pointedly remarked on how Plaintiff did not even try physical

12  therapy until January 2019 (a month before he filed the instant disability claim), even though

13  Plaintiff's alleged onset date was March 11, 2018, and Plaintiff testified that he experienced back

14  pain even prior to the date of onset.  (AR 26, 27.)  This comment is relevant, as an ALJ is

15  permitted to consider lack of treatment and delays in seeking treatment—as well as failure to seek

16  treatment or assert a good reason for not seeking treatment—in her credibility assessment.  See

17  Molina, 674 F.3d at 1114 (claimant's failure to assert a good reason for not seeking treatment can

18  cast doubt on the sincerity of the claimant's pain testimony, as can a failure to seek treatment

19  until after the claimant applies for disability benefits); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

20  1989) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

21  course of treatment … can cast doubt on the sincerity of the claimant's pain testimony."); see also

22  Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (upholding

23  ALJ's adverse credibility determination where claimant failed to follow up with a recommended

24  plan for treatment, viewing it as "a waste of time"); Burch, 400 F.3d at 681 (affirming ALJ's

25  adverse credibility determination due to lack of consistent treatment; commenting on claimant's

26  failure to attend physical therapy, chiropractor, or do home exercises, "[t]hat [the claimant]'s pain

27  was 'not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought

28  some treatment, is powerful evidence regarding the extent to which she was in pain.") (internal

citations omitted).  Though the pace at which Plaintiff's treatment progressed and, likewise, any unexplained delays in seeking certain treatment is a legitimate consideration in determining the severity of an impairment and reaching a credibility determination, Plaintiff does not address this consideration in his briefing.

As to Plaintiff's epidural injections and the spinal cord stimulator, a plain reading of the ALJ's decision belies Plaintiff's allegation that these treatments were not addressed or considered.  To the contrary, the ALJ noted Plaintiff received an injection in his right hip to address his complaints of pain in his back and lower extremities in November 2018, and after this initial hip injection, he "had few acute hip complaints, indicating the pain improved."  (AR 27.)  Thereafter, the ALJ notes:

> Plaintiff "complained of ongoing lower back pain in 2020, so it was recommended he try epidural steroidal injection therapy (ESI) in April.  The claimant reported only temporary improvement and he was given another round of injections in July, when it was noted that he had some tenderness to palpation over his lower back and that he also had a positive straight leg raise test on the right (1OF).  In October, he continued to complain of constant lower back pain and radiculopathy, but declined further injections.  He planned to follow up with a surgeon.  It was noted he had some tenderness to palpation over his lower back and had an antalgic gait.  He had normal strength except his left lower extremity.  He also had a positive straight leg raise test on the left.  He alleged some pain with heel and toe walking (18F/12).  However, the next month it was noted he had a normal gait and station with normal strength and sensation, but was ambulating with a cane.  He had normal coordination and reflexes.  The claimant agreed with a placement of a spinal stimulator (18F/4).

(AR 26–27.)  As previously noted, the ALJ further considered that Plaintiff testified his new doctor wants to try a pain stimulator implantation before considering surgery.  (AR 26.)  Thus, it is plain that the ALJ considered Plaintiff's injection and spinal stimulator treatments in reaching her credibility determination.

With respect to Plaintiff's spinal cord implant, to the extent it may be considered a surgery, the Court acknowledges surgery is generally not considered a "conservative" treatment.  However, courts have reached varying conclusions based on the longitudinal records of each particular case as to whether a treatment plan, on whole, may be considered "conservative."  Compare, e.g., Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal.

Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection) with Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) ("doubting" that epidural steroid shots qualified as "conservative" medical treatment for fibromyalgia).  Thus, the fact that Plaintiff received an implant and two or three injections for pain does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative.  See Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged.") (citing Parra, 481 F.3d at 751); see also Martin v. Colvin, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); Zaldana v. Colvin, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination).  Here, the Court finds the ALJ's characterization of Plaintiff's treatment on whole as conservative was not unreasonable, where the majority of Plaintiff's continued treatment for his impairments over multiple years appears to consist largely of medications and some physical therapy.  Indeed, the ALJ considered Plaintiff's most recent treatment in 2020, noting, "Exhibit 20F contains treating notes regarding visits in 2020. Medications were monitored.  No surgeries are noted.  Telehealth visits were conducted as a result of the covid pandemic.  Few changes in condition are reflected.  Obesity was noted. Overall conservative management was continued."  (AR 27.)  To the extent Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error and the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

Finally, Plaintiff's argument that the ALJ failed to consider his medication side effects is unavailing.  It is plain that the ALJ considered this allegation and, in fact, accommodated

Plaintiff's medication side effects by adding a restriction in the RFC to limit Plaintiff's exposure to hazards.  (AR 28 ("[Plaintiff's] medication side effects have also been addressed by limiting his exposure to hazards.").)

Thus, the Court finds the substantial evidence of Plaintiff's conservative treatment constitutes a clear and convincing reason in support of the ALJ's credibility determination.

### d.      Plaintiff's Remaining Argument: Boilerplate Language

Finally, Plaintiff argues the ALJ's review of his pain testimony was inadequate because it included boilerplate language.  In particular, Plaintiff takes issue with the ALJ's use of "the boilerplate statement found in every ALJ's decision": "In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and SSR 16-3p."  (ECF No. 18 at 9 (citing AR 25).)  This argument takes the ALJ's statement out of context.  A review of the ALJ's decision reveals that, immediately following the at-issue statement, the ALJ provided a detailed discussion of the evidence in support of her ultimate conclusion, as well as several other relevant conclusions throughout her evaluation of Plaintiff's symptom allegations.  (See AR 26–28.)  Accordingly, Plaintiff's argument is unavailing.

In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in support of her determination that Plaintiff's treatment is inconsistent with the severity of his alleged symptoms.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10.  While Plaintiff may seek to suggest an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).  Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's pain testimony.

### B.      Whether the ALJ Properly Evaluated the Medical Opinion Evidence

Plaintiff argues the ALJ improperly discounted the medical opinions of the State Agency medical consultants, Drs. E. Wong, M.D., and C. Bullard, M.D.  As a result, Plaintiff argues the RFC is not supported by substantial evidence.  (ECF No. 18 at 12–18.)

1   1.  <u>Legal Standard</u>

2    The RFC is an assessment of the sustained, work-related physical and mental activities the

3 claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§

4 404.1520(e), 404.1545(a), 416.945(a);  <u>see also</u> <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1085 (9th

5 Cir. 1985) (RFC reflects current "physical and mental capabilities"); SSR 96-8p, at *2.  Thus, it

6 represents the maximum amount of work the claimant is able to perform based on all the relevant

7 evidence in the record.  <u>See id.</u>; <u>see also</u> 20 C.F.R. § 416.945(a)(3) (RFC determination must be

8 "based on all of the relevant medical and other evidence.").  As previously noted, the RFC is not a

9 medical opinion, but a legal decision that is expressly reserved for the Commissioner.  <u>See</u> 20

10 C.F.R. §§ 404.1527(d)(2), 404.1546(c); <u>Vertigan</u>, 260 F.3d at 1049 ("It is clear that it is the

11 responsibility of the ALJ, not the claimant's physician, to determine residual functional

12 capacity.") (citing 20 C.F.R. § 404.1545).  And where "the record contains conflicting medical

13 evidence, the ALJ is charged with determining credibility and resolving the conflict."  <u>Benton v.</u>

14 <u>Barnhart</u>, 331 F.3d 1030, 1040 (9th Cir. 2003); <u>Batson</u>, 359 F.3d at 1195; <u>see also</u> <u>Lingenfelter v.</u>

15 <u>Astrue</u>, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating

16 and examining physicians, the ALJ has discretion to weigh the value of each of the various

17 reports, to resolve conflicts in the reports, and to determine which reports to credit and which to

18 reject."); <u>Morgan v. Comm'r of Soc. Sec. Admin.</u>, 169 F.3d 595, 603 (9th Cir. 1999) (holding

19 that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's

20 reports); <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041–42 (9th Cir. 2008) ("[T]he ALJ is the final

21 arbiter with respect to resolving ambiguities in the medical evidence.").

22    In reviewing whether an ALJ committed error in determining the RFC, the relevant

23 inquiry is whether the medical evidence supports the ALJ's finding.  <u>Stubbs-Danielson v. Astrue</u>,

24 539 F.3d 1169, 1173–74 (9th Cir. 2008) (holding the RFC assessment adequately captures

25 restrictions if it is consistent with the concrete limitations in the medical opinions); <u>see also</u>

26 <u>Schneider v. Comm'r</u>, 433 Fed. Appx. 507, 509 (9th Cir. 2011) (ALJ's failure to address

27 claimant's migraines was harmless because medical record did not support finding that migraines

28 would affect claimant's functioning at work).  Accordingly, "[t]he ALJ's RFC determination need

1   not precisely reflect any particular medical provider's assessment."  Althoff-Gromer v. Comm'r

2   of Soc. Sec., No. 2:18-cv-00082-KJN, 2019 WL 1316710, at *13 (E.D. Cal. Mar. 22, 2019)

3   (citing Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1222–23 (9th Cir. 2010)); see also Chavez

4   v. Colvin, 654 Fed. App'x 374, 375 (10th Cir. 2016).  This is because it is within the ALJ's

5   province to synthesize the medical evidence.  See Lingenfelter, 504 F.3d at 1042.

6        Where, as here, a claim is filed after March 27, 2017, the revised Social Security

7   Administration regulations apply to the ALJ's consideration of the medical evidence.  See

8   Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

9   5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

10  regulations, the agency "will not defer or give any specific evidentiary weight, including

11  controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

12  those from [the claimant's own] medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

13  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when

14  considering medical opinions, and no longer mandate particularized procedures that the ALJ must

15  follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is

16  not required to articulate how [he] considered each medical opinion or prior administrative

17  medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675

18  (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised

19  Social Security regulations abrogate prior precedents requiring an ALJ to provide "specific and

20  legitimate reasons supported by substantial evidence in the record" for rejecting the opinion of a

21  treating physician.  Woods v. Kijakazi (Woods II), 32 F.4th 785, 788–92 (9th Cir. 2022).

22       Instead, "[w]hen a medical source provides one or more medical opinions or prior

23  administrative medical findings, [the ALJ] will consider those medical opinions or prior

24  administrative medical findings from that medical source together using" the following factors:

25  (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5)

26  other factors that "tend to support or contradict a medical opinion or prior administrative medical

27  finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in

28  evaluating the persuasiveness of medical opinions and prior administrative medical findings are

supportability and consistency.  20 C.F.R. §§ 404.1520c(a), (b)(2).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in her decision how persuasive she finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. § 404.1520c(b)(2).  The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. § 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how [she] considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how she considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

2.    Analysis

At the initial level of review of Plaintiff's disability application, State agency consultant Dr. Wong issued an opinion based on his examination of Plaintiff and review of the record through April 12, 2019.  (See AR 68–73.)  Dr. Wong opined Plaintiff is capable of sedentary work: standing and/or walking for two hours in an eight-hour workday and sitting for about six hours in an eight-hour workday; is limited to lifting ten pounds occasionally and less than ten pounds frequently; and is limited in his postural activities.  At the reconsideration level, Dr. Bullard reviewed the record through August 27, 2019, and affirmed Dr. Wong's opinion.  (AR 82–86.)

In evaluating the medical opinion evidence, the ALJ did not find the opinions of Drs.

Wong or Bullard to be persuasive because:

> First, the opinion is poorly supported as the claimant had normal gait and station often in the record, which is inconsistent with the limitation to sedentary work (1F/l-8; 2F; 18F/4). He also had largely normal strength in the record aside from slightly diminished strength in certain extremities (9F/12 and 18F/4). The opinions are also inconsistent with some of the claimant's reporting in the record, as he stated in 2018, as he reported that he can clean his home, drive, cook, bathe, and dress himself (1F/1-8 and 2F). These findings are inconsistent with a limitation to sedentary work. Therefore, the opinions are not persuasive."

(AR 27.)  As noted, the ALJ found Drs. Wong and Bullard's opinions were unsupported because the medical record often indicated Plaintiff had a normal gait, and because Plaintiff had largely normal strength in the record aside from slightly diminished strength in certain extremities, which is inconsistent with the limitation to sedentary work.  Further, the ALJ found Drs. Wong and Bullard's opinion that Plaintiff should be limited to sedentary work was inconsistent with the record showing Plaintiff was capable of performing certain ADLs, such as cleaning, driving, cooking, bathing, and dressing himself.  The Court finds the ALJ's analysis of the supportability and consistency factors relative to Drs. Wong and Bullard's medical opinions was appropriately considered and is based on substantial evidence from the record.  See Woods II, 32 F.4th at 792; Martinez V., 2021 WL 1947238, at *3; see also Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (inconsistencies with evidence in the record support discounting a medical opinion).

Plaintiff argues the ALJ applied an incorrect standard with respect to the supportability and consistency factors and failed to identify sufficient objective medical evidence and supporting explanations presented by a medical source to support her findings.  (ECF No. 18 at 14–18.)  Plaintiff argues the evidence of a normal gait, only "slightly diminished strength," and the ability to perform some routine ADLs, as identified by the ALJ, is insufficient to justify her rejection of the state agency doctors' opinions because these limited notes constitute singular discrepancies within the record.  Plaintiff also argues the ALJ "downplays" his pain allegations, the need to use a cane, allegations that physical therapy was ineffective, and other instances in the record denoting the severity of his condition.  And Plaintiff argues the ALJ failed to consider that his condition was deteriorating in 2020, requiring epidural injections, and ultimately a

recommendation for a spinal cord stimulator by the end of the year.  Thus, Plaintiff asserts the evidence relied upon by the ALJ constitutes a mischaracterization of the record.

The Court finds Plaintiff's arguments unpersuasive.  Notably, Plaintiff's "mischaracterization of the record" argument based on the "limited notes" of normal gait and strength cited by the ALJ in her decision is the exact same argument he asserts with respect to the ALJ's credibility determination based on inconsistencies with the medical record.  Similarly, the Court has addressed Plaintiff's arguments that the ALJ failed to consider his injections, cane usage, physical therapy, and spinal cord stimulator treatments and found those arguments unavailing.  As such, the instant arguments fail for the same reasons previously articulated by the Court.  See Stubbs-Danielson, 539 F.3d at 1175–76 (rejecting a step five argument that "simply restates" arguments about medical evidence and testimony); see also Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988) (acknowledging there is no requirement that testimony for which the ALJ has provided specific and legitimate reasons to discount be included in the hypothetical given the VE).

Furthermore, to the extent Drs. Wong and Bullard's opinions relied on Plaintiff's pain testimony, the ALJ reached an adverse credibility determination against Plaintiff, a determination which this Court finds is supported by substantial evidence in the record.  Thus, to the extent Plaintiff seeks to bolster the validity of Drs. Wong and Bullard's opinions through reliance on his own testimony and allegations, the Ninth Circuit has held an ALJ may properly discount an examiner's opinion that is based primarily on a claimant's self-report of limitations.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("If a treating provider's opinions are based to a large extent on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion") (internal citation omitted); see also Chaudry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (finding ALJ properly discounted examiner's opinion that was "based primarily on [the claimant's] self-report of limitations"); Tommasetti, 533 F.3d at 1041 (incongruity between a treating physician's opinion and the medical records constitutes substantial evidence to support an ALJ's reason for rejecting the physician's opinion of the patient's limitations).

Finally, the Court notes Plaintiff argues the ALJ has impermissibly substituted her own opinion for a doctor's professional interpretation of clinical testing because she rejected the opinions of both Drs. Wong and Bullard, and reached an RFC determination that did not resemble any doctor's opinion.  But this argument is unavailing as well.  As previously noted, the RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c); Vertigan, 260 F.3d at 1049 ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity.") (citing 20 C.F.R. § 404.1545).  Further, it is within the ALJ's province to synthesize the medical evidence, resolve conflicts and ambiguities in the medical testimony, and determine credibility.  See Andrews, 53 F.3d at 1039; Batson, 359 F.3d at 1195; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports); Tommasetti v. Astrue, 533 F.3d 1035, 1041–42  (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003) (where "the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.").  Consequently, "[t]he ALJ's RFC determination need not precisely reflect any particular medical provider's assessment."  Althoff-Gromer, 2019 WL 1316710, at *13; Turner, 613 F.3d at 1222–23; Chavez v. Colvin, 654 Fed. App'x. 374, 375 (10th Cir. 2016) (ALJ need not "parrot … exact descriptions of … limitations" to reach an RFC determination consistent with the medical record and claimant's limitations).  Thus, to the extent Plaintiff suggests otherwise, his argument is unavailing.

In sum, the ALJ's analysis addressed the medical opinions of Drs. Wong and Bullard and the cumulative medical and non-medical evidence, and that analysis is supported by substantial evidence in the record.  Ford, 950 F.3d at 1154; Martinez V., 2021 WL 1947238, at *3.  To the

extent Plaintiff seeks to present an alternative interpretation of his testimony and the medical notes, he is reminded that where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the ALJ.  Drouin v. Sullivan, 966 F.2d 1255, 1258 (9th Cir. 1992); Burch, 400 F.3d at 679.  Here, the ALJ's conclusions were supported by substantial evidence, and the Court cannot say that the ALJs's interpretation of the available evidence was not rational.  Shaibi v. Berryhill, 883 F.3d 1102, 1108 (9th Cir. 2017).  Thus, the Court will not disturb the ALJ's supportability and consistency findings with respect to the medical opinions of Drs. Wong and Bullard.

C.      **Whether the ALJ Failed to Resolve Apparent Conflicts Regarding the Limitations in Plaintiff's RFC Pursuant to SSR 00-4p**

1.      Legal Standard

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (citation and internal quotations omitted).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).  Hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  SSR 00-4p, *2, available at 2000 WL 1898704 (Dec. 4, 2000).  The ALJ must inquire, on the record at the disability hearing, as to whether or not there is such consistency.  Id.; see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007).   Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the conflict by determining if the

explanation given by the VE is reasonable and provides a basis for relying on the VE's testimony rather than the DOT information.  SSR 00-4p, at *2.

     2.   <u>Analysis</u>

Plaintiff argues the ALJ failed to resolve apparent conflicts between the RFC and the DOT.  Specifically, Plaintiff argues the DOT positions identified by the VE generally require standing and/or walking for six hours, and that this requirement is in apparent conflict with the RFC limitation to standing/walking for four hours in an eight-hour workday.  (ECF No. at 18–20.)  Further, Plaintiff argues the VE repeatedly referred to an employer providing a chair or stool as an "accommodation," which is an impermissible consideration in social security cases and does not reconcile the identified apparent conflict.  The Court finds Plaintiff's argument is unpersuasive.

A review of the hearing testimony does not support Plaintiff's contention that the VE was asserting a special accommodation (of a chair or stool) was required for Plaintiff to do the jobs identified to the ALJ; in fact, the ALJ did not provide any hypotheticals regarding whether Plaintiff could receive an accommodation, and the VE did not state his job reduction estimates were based on the number of jobs in which an accommodation would be provided.  Rather, the record shows the VE reduced the available job numbers for the cashier and small products assembler positions to exclude those jobs that required the light exertional level's usual six-hours-in-a-workday standing and/or walking ability and include only those jobs where Plaintiff could stand and/or walk for four hours in a workday.  The VE expressly testified the ALJ's hypothetical person could complete work as a cashier, small product assembler, and electronics worker even with the four-hour standing and/or walking limitation.  (AR 59–60.)  Further, the VE stated that his testimony was based on the DOT and his "over 30 years of experience as a vocational rehabilitation counselor and consultant."  (AR 60.)  And, when pointedly asked what his cashier and small products assembler job reductions were based on, the VE responded that these reductions were calculated as a result of his "professional opinion based on direct observation of those jobs in a variety of environments, and with a variety of employers really over the past three decades."  (AR 62.)

On this record, the Court is persuaded that the VE's reference to "accommodation" did not implicate ADA-based accommodations, as Plaintiff argues, but pertained to the VE's explanation for reducing the number of available jobs based on the hypothetical restriction of four-hours-in-a-workday standing and/or sitting.   Further, the ALJ's reliance on the VE's testimony was reasonable.   Accordingly, the Court concludes the ALJ sufficiently addressed and resolved the conflict between the jobs' DOT standing/walking definition and the VE's testimony.

> **D.     Whether the Appointment of Andrew Saul as Commissioner of the Social Security Administration Violates the Separation of Powers and Renders the ALJ's Decision Constitutionally Defective**

1.    Parties' Arguments

**a.     Plaintiff's Argument**

Finally, Plaintiff argues the ALJ's decision denying his disability claim was constitutionally defective because the Act provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates separation of powers.  (ECF No. 18 at 20–23.)

Elaborating on this argument, Plaintiff asserts it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause (*i.e.*, a removal restriction); the "insulation from removal by an accountable President is enough to render the agency's structure unconstitutional"; and the Commissioner of the SSA is the singular head of the Agency, serves for six years, and cannot be removed by the President except for cause; therefore, "[t]he appointment of Andrew Saul … violates separation of powers" and is unconstitutional, and the SSA's structure is likewise unconstitutional.  (ECF No. 18 at 20–21 (citing Collins v. Yellen, 141 S. Ct. 1761 (2021); Seila Law LLC v. CFPB (Seila Law), 140 S. Ct. 2183 (2020); Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (Jul. 8, 2021) ("OLC Op.")).)

Furthermore, Plaintiff maintains only the Commissioner of the SSA can make findings of fact and issue final decisions as to benefits eligibility, and an ALJ's authority to hear and decide a case is delegated from the Commissioner.  (Id. at 21 (citing 42 U.S.C. §§ 405(b)(1), 902;

HALLEX I-2-0-2(A)).)   Plaintiff argues that, because the removal provision under § 902 was unconstitutional, Commissioner Saul lacked authority to promulgate regulations; thus, the ALJ's authority to decide Plaintiff's case, which was delegated from Commissioner Saul, was constitutionally defective, and the ALJ decided Plaintiff's case "under invalid regulations promulgated by a Commissioner with no constitutional authority to do so, and as such, a presumptively faulty legal standard was used to adjudicate this claim at the administrative level." (Id.).   Therefore, Plaintiff asserts that applying the purported "Collins three-prong test" to determine whether he is entitled to any relief, Plaintiff asserts: (1) he has standing to raise this constitutional claim because he sustained a sufficient injury from an executive act that allegedly exceeds the official's authority; and (2) the statutory provision at issue (presumably here, the removal restriction) was unconstitutional.[11]   (ECF No. 18 at 21–22 (citing Collins, 141 S. Ct. at 1783–87).)

In essence, Plaintiff argues that, because the ALJ's authority is derived from regulations promulgated by Commissioner Saul, the regulations are invalid and the ALJ's decision is

---

[11] As noted herein, Plaintiff's proffer of a three-part test to determine whether a party is entitled to relief appears to be a misinterpretation of Collins, which does not set forth any such test for establishing whether a party is sufficiently aggrieved to be entitled to relief based on an unconstitutional removal provision.  In any event, the Court notes Plaintiff only appears to address two of three purported prongs of the Collins test in his opening brief, (1) standing and (2) whether the statutory provision at issue was unconstitutional.  (See ECF No. 18 at 21–22.)  Moreover, the opening brief's discussion of these two prongs is, at best, conclusory.  (See id.)  That is, the only argument Plaintiff advances in support of standing is that "Plaintiff is a challenger that has sustained a sufficient injury from an executive act that allegedly exceeds the official's authority."  (Id.)  Plaintiff does not expressly identify what injury he incurred, what executive act caused the injury and how that act exceeded the official's authority, or which statutory provision is at issue (see id.).  Instead, in his reply brief, Plaintiff asserts argument—for the first time—that his injuries include (1) not receiving a constitutionally valid hearing and adjudication from an ALJ, (2) not receiving a constitutionally valid decision from an ALJ, and (3) receiving an unfavorable disability decision (ECF No. 20 at 4); that his constitutional challenge is not based on the Appointments Clause, but rather the delegation of authority under which the ALJ adjudicated and decided his case (id. at 4–5); and that no showing of "cause" is necessary in this case—or, alternatively, causation and harm should be presumed here—because the government actors exercised power they did not lawfully possess, and that " 'but for' the unlawful delegation of authority to this ALJ, those governmental actors could not have adjudicated and issued the adverse determinations which they did in this case" (id. at 5–7).  The Court notes that arguments raised for the first time in reply briefs are ordinarily waived, given the lack of opportunity for the other party to respond to them.  See, e.g., Martinez v. Ylst, 951 F.2d 1153, 1156–57 (9th Cir. 1991) (issue raised late in reply brief would not be considered, particularly since appellant's failure to properly brief the issue "clearly misled the appellee" and, "[a]s a result, the issue was not properly briefed."); see also Delacruz v. Kijakazi, No. 19-16577, 2021 WL 4777007 (9th Cir. Oct. 13, 2021) (declining to consider claimant's request for sanctions, raised for the first time in her reply brief); Stevens v. Dept. of Health & Human Servs., 962 F.2d 15 (9th Cir. 1992) ("The second contention was raised for the first time in Stevens' reply brief and we decline to address arguments not raised in the appellant's opening brief.").  In the interests of judicial efficiency, however, the Court does consider some of Plaintiff's late-raised arguments, to the extent the issue was addressed by Defendant, herein.  See Doe v. Whitman College, 100 F.3d 961 (9th Cir. 1996) (noting the court may consider arguments raised for the first time in a reply brief if the appellee raised the issue in its brief).

1  constitutionally defective. Plaintiff contends he was deprived of a valid administrative

2  adjudicatory process and the case must be remanded for a *de novo* hearing before a new ALJ who

3  "do[es] not suffer from the unconstitutional taint of having previously heard and decided this case

4  without lawful authority to do so." (Id. at 20–23.)

5          **b.      Defendant's Argument**

6          Defendant does not dispute that § 902(a)(3) violates separation of powers to the extent it is

7  construed as limiting the President's authority to remove the Commissioner without cause, see

8  OLC Op., 2021 WL 2981542, but nevertheless argues that this alone does not require the instant

9  social security appeal be remanded. (ECF No. 19 at 14–15.) Defendant proffers several reasons

10  for this position: Plaintiff cannot establish actual harm, as required under Collins; countless

11  district courts across the country have rejected similar arguments raised by claimants in social

12  security appeals; the purported constitutional error is harmless to the instant case; the *de facto*

13  officer doctrine defeats an award of retrospective relief to Plaintiff; the rule of necessity precludes

14  Plaintiff's requested relief, as every SSA decision from every ALJ would need to be remanded;

15  and prudential reasons, such as avoiding pointless "do over" hearings at the expense of thousands

16  of other claimants waiting in the queue for their own initial hearing. (Id. at 15–22.)

17          2.      Analysis

18          As best ascertained by this Court, the main thrust of Plaintiff's argument is that, due to the

19  unconstitutional removal restriction under § 902, Commissioner Saul's entire *tenure*[12] was

20  unconstitutional, every regulation and action that originated with Mr. Saul exceeded his statutory

21  authority, and thus, every disability decision issued by every ALJ pursuant to Mr. Saul's

22  delegation of authority—including the decision of nondisability issued by the ALJ in the instant

23  lawsuit—is invalid. (See ECF No. 18 at 21–22; ECF No. 20 at 2–8.) As discussed in greater

24  detail herein, this position is not supported in law and fails for several reasons.

25          Perhaps most notably, Plaintiff's argument is unavailing because nothing regarding the

---

26  [12] Confusingly, the Court notes the main heading in Plaintiff's opening brief regarding this issue states "The
27  appointment of Andrew Saul as Commissioner of the Social Security Administration, removable only for cause,
violates separation of powers…." (ECF No. 18 at 20); yet Plaintiff concedes in his reply brief that he does not
challenge the appointments of any of the ALJs, and that "[t]his appeal is not an Appointments Clause challenge" (see
28  ECF No. 20 at 4–5).

appointments of Mr. Saul or the ALJs was infirm.  Plaintiff's entire position is premised upon the separation of powers violation inherent in the SSA's removal restriction.  However, because, at all times relevant to Plaintiff's disability claim, there is no competent evidence to indicate that there was any attempt by the President to remove Mr. Saul, nor is there any indication that the method of appointment of Mr. Saul was unconstitutional, or that Mr. Saul "lacked the authority to carry out the functions of the office," there is simply no reason to void any of the actions taken by the SSA.  Furthermore, the unconstitutionality of the removal restriction, alone, does not invalidate Mr. Saul's actions, or otherwise render the structure of the SSA void because the removal clause is severable from the other statutory provisions governing the SSA, such that the agency may continue to operate.

### a.    Standing

As an initial matter, the Court notes Plaintiff argues he has standing as "a challenger that has sustained sufficient injury from an executive act that allegedly exceeds the official's authority."  (ECF No. 18 at 21.)  Plaintiff argues Defendant did not brief the issue of standing in its opposition (ECF No. 20 at 3); this is questionable as Defendant addresses the issue of compensable harm and traceability (ECF No. 19 at 15–19).  In any event, as the Court has a continuing obligation to evaluate whether it has jurisdiction over a matter it shall address Plaintiff's standing arguments.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102–04 (1998) (if a plaintiff lacks Article III standing, then the Court lacks subject matter jurisdiction and the case must be dismissed); DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340 (2006) (the court has an ongoing obligation to make sure it has jurisdiction to decide the claim before it).

The Supreme Court noted, "whenever a separation-of-powers violation occurs, any aggrieved party with standing may file a constitutional challenge."  Id. at 1780 (citations omitted). To establish Article III standing, Plaintiff must show he has suffered an "injury in fact" that is "fairly traceable" to Defendant's conduct and would likely be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Plaintiff asserts he has standing because he received an adverse determination on his disability claim from both the Commissioner's ALJ and the Appeals Council.  (ECF No. 20 at 3.)

Plaintiff's argument that the injury is "fairly traceable" to Defendant's conduct appears to derive from the separation of powers challenge, in that Commissioner Saul had no valid authority to delegate to the ALJs adjudicating disability claims, including Plaintiff's claim; therefore, the decision is void.  (See id. at 3–4.)

The Court is not entirely persuaded Plaintiff has met his burden.  First, Plaintiff argues he has established standing, like the parties in Seila Law and other cases.  However, these cases appear distinguishable.  In Seila Law, for example, the Consumer Financial Protection Bureau's ("CFPB") issued a civil investigative demand to Seila Law to determine whether the firm had engaged in unlawful acts or practices in the advertising, marketing, or sale of debt relief services; the demand was essentially a subpoena that directed Seila Law to produce information and documents related to its business practices.   Seila Law, 140 S. Ct. at 2193–94.  Seila Law ultimately raised the issue of the purportedly unconstitutional removal restriction before the Supreme Court.  Id.  Amicus argued Seila Law lacked standing because the demand was not "traceable" to the alleged constitutional defect.  Id. at 2195.  The Supreme Court rejected this argument, noting that Seila Law was the defendant in the district court, id. at 2195–96 ("Article III does not restrict the opposing party's ability to object to relief being sought at its expense." (citation omitted)); moreover, requiring Seila Law to comply with the civil investigative demand and provide documents it would prefer to withhold constituted a concrete injury, which was traceable to CFPB's demand, id. at 2196.  Unlike Seila Law, however, Plaintiff chose to initiate an application to receive disability benefits from the SSA, and was never a "defendant" at any stage of these proceedings.[13]

In Collins, as another example, the court found the shareholders established injury-in-fact by demonstrating the Federal Housing Finance Agency ("FHFA") transferred the value of their property rights in Fannie Mae and Freddie Mac to the Department of Treasury.  Collins, 141 S.

---

[13] In addition, the Court notes the Supreme Court cautioned against misreading its statement about standing in Seila Law as establishing a holding on a party's entitlement to relief based on an unconstitutional removal restriction: "We held that a plaintiff that challenges a statutory restriction on the President's power to remove an executive officer can establish standing by showing that it was harmed by an action that was taken by such an officer and that the plaintiff alleges was void…. But that holding on standing does not mean that actions taken by such an officer are void ab initio and must be undone…." Collins, 141 S. Ct. at 1788 n.24 (citation omitted).

Ct. at 1781.  Further, the court found this injury was traceable to the FHFA's adoption and implementation of the third amendment to a negotiated agreement between certain companies and Treasury, which was responsible for the variable dividend formula that swept the companies' net worth to Treasury and left nothing for their private shareholders.  And the court found that a decision in the shareholders' favor could easily lead to the award of at least some of the relief that they sought.

Unlike Collins, Plaintiff has not established he had a property right or other legal interest in disability benefits which was threatened by agency action.  Importantly, the instant case differs from Collins in that the challenging parties in Collins pointed to a specific action by Defendant: the adoption and implementation of the third amendment to the agreement with Treasury.  Here, by contrast, the Court cannot discern from Plaintiff's briefings any allegedly unlawful conduct committed by Commissioner Saul, let alone the ALJ who issued the decision on Plaintiff's disability claim.  Plaintiff asserts the ALJ decided his case under "invalid regulations" promulgated by Commissioner Saul, but Plaintiff does not identify any particular regulation that was purportedly invalid, nor does he establish that such regulation was promulgated by Commissioner Saul.  Furthermore, Plaintiff claims Commissioner Saul "exceeded his authority," but the briefing does not assert any facts to identify any particular action taken by Mr. Saul that exceeded the authority of the Commissioner.  At most, Plaintiff points very generally to the delegation of authority by Commissioner Saul, which appears to derive solely from Plaintiff's SSA removal restriction argument.  But to the extent Plaintiff contends he was harmed in this manner because the removal restriction under § 902 was unconstitutional, the Supreme Court rejected such a contention in Collins, stating "for purposes of traceability, the relevant inquiry is whether the plaintiffs' injury can be traced to 'allegedly unlawful conduct' of the defendant, not to the provision of law that is challenged."  Id. at 1779 (citing Lujan, 504 U.S. at 560 (explaining that the plaintiff must show "a causal connection between the injury and the conduct complained of," and that "the injury has to be fairly traceable to the challenged action of the defendant") (additional citations omitted)).  Thus, the Court cannot conclude Plaintiff has established his purported injury is sufficiently traceable to any wrongful act by Defendant.

Regardless, even if this generalized action is sufficient for Article III standing purposes, the Court finds Plaintiff's argument to ultimately be unavailing due to his failure to establish compensable harm and a causal nexus between such harm and any action by Commissioner Saul, as discussed in greater detail herein.

### b.       Unconstitutionality of the SSA's Removal Restriction

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Here, the Court finds <u>Seila Law</u> and <u>Collins</u> mandate a finding that the removal clause in § 902 violates the Constitution's separation of powers.  In <u>Seila Law</u>, the Supreme Court held the CFPB removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office,"  12 U.S.C. § 5491(c)(3), violated separation of powers by insulating the director from removal by the President.  <u>Seila Law</u>, 140 S. Ct. at 2197.   In <u>Collins</u>, the Court held a provision limiting the President to removing the director of the FHFA only for cause violated separation of powers.  <u>Collins</u>, 141 S. Ct. at 1783 (holding that "<u>Seila Law</u> is all but dispositive").

Here, Plaintiff argues that <u>Collins</u> and <u>Seila Law</u> are analogous to the instant matter in that the removal restrictions relating to the CFPB and FHFA are substantially similar to the SSA's removal restriction under § 902.  See <u>id.</u> at 1783–84; <u>Seila Law</u>, 140 S. Ct. at 2197, 2207.  As noted, Defendant does not dispute that § 902(a)(3) violates separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause.  (ECF No. 19 at 15); <u>see</u> <u>OLC Op.</u>, 2021 WL 2981542.  Thus, the Court concludes for purposes of the instant appeal that the removal restriction under § 902(a)(3) violates separation of powers and is therefore unconstitutional.

Whether the entire structure of the SSA and all lower-level administrative decisions rendered during Commissioner Saul's tenure must also be rendered unconstitutional, as Plaintiff contends, is a different matter.

### c.       Severability of the Removal Restriction from the Remainder of the Act

As noted, it is Defendant's position that the unconstitutionality of the removal restriction, alone, does not require the instant social security appeal to be remanded.  Plaintiff, by contrast,

argues that because the removal restriction is unconstitutional, Commissioner Saul's "appointment" was unconstitutional, every regulation and action that originated with him exceeded his statutory authority and is void, and thus, every disability decision issued by every ALJ pursuant to Commissioner Saul's delegation of authority (including the instant social security appeal) is void.  The Supreme Court, however, has definitively held that a removal provision is "severable from the other statutory provisions bearing on the [agency's] authority[,]" and "[t]he agency may therefore continue to operate[.]"  Seila Law, 140 S. Ct. at 2192.

As explained by the Supreme Court in Seila Law and Collins, the specific sections of the governing removal statutes that violated separation of powers in these cases were separate and severable from other provisions governing the operations of the CFPB and the FHFA.  More specifically, in Seila Law, the Supreme Court explained:

> It has long been settled that one section of a statute may be repugnant to the Constitution without rendering the whole act void.  Because a statute bad in part is not necessarily void in its entirety, provisions within the legislative power may stand if separable from the bad.
>
> Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem, severing any problematic portions while leaving the remainder intact.
>
> …
>
> The only constitutional defect we have identified in the CFPB's structure is the Director's insulation from removal.  If the Director were removable at will by the President, the constitutional violation would disappear.  We must therefore decide whether the removal provision can be severed from the other statutory provisions relating to the CFPB's powers and responsibilities….

Id. at 2208–09 (internal citations, quotations, and brackets removed).  At bottom, the Supreme Court determined the CFPB's removal provision was severable from CFPB's other statutory provisions:

> The provisions of the Dodd-Frank Act bearing on the CFPB's structure and duties remain fully operative without the offending tenure restriction.  Those provisions are capable of functioning independently, and there is nothing in the text or history of the Dodd-Frank Act that demonstrates Congress would have preferred no CFPB to a CFPB supervised by the President.  Quite the opposite….

Id. at 2209.  On this basis, the Supreme Court concluded the CFPB had the authority to continue its operations, despite the separation of powers violation caused by the removal statute.  Id. at 2192.

Likewise, in Collins, the Supreme Court said there was no reason to void any of the actions taken by the FHFA, because there was nothing to indicate the method of appointment for the director was unconstitutional or that the director "lacked the authority to carry out the functions of the office."  Collins, 141 S. Ct. at 1788.  The court explained that where the agency head was properly appointed, "the unlawfulness of the removal provision does not strip the [agency head] of the power to undertake the other responsibilities of his office," and there was "no reason to regard any of the actions taken by the [agency] ... as void."  Id. at 1787–88, n.23.

Indeed, in holding a removal restriction is severable, the Supreme Court rejected an argument practically identical to the one now asserted by Plaintiff in the instant matter.   In Collins, the shareholders argued the at-issue third amendment must be completely undone because the third amendment was adopted and implemented by officers who lacked constitutional authority and their actions were therefore void ab initio.  Collins, 141 S. Ct. at 1787.  In rejecting this argument, the Supreme Court explained

> We have already explained that the Acting Director who *adopted* the third amendment was removable at will…. That conclusion defeats the shareholders' argument for setting aside the third amendment in its entirety.   We therefore consider the shareholders' contention about remedy with respect to only the actions that confirmed Directors have taken to *implement* the third amendment during their tenures.  But even as applied to that subset of actions, the shareholders' argument is neither logical nor supported by precedent.  All the officers who headed the FHFA during the time in question were properly *appointed*.  Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA in relation to the third amendment as void.

Id. (emphasis in original).

Thus, despite the unconstitutionality of the removal restriction under § 902, actions taken under Commissioner Saul are not automatically rendered void because the removal restriction is severable from the remainder of the SSA structure.  See id. at 1787–89, n.24 (an unconstitutional

removal restriction "does not mean that actions taken by such an officer are void *ab initio* and must be undone"); <u>Seila Law</u>, 140 S. Ct. at 2210–11 ("We think it clear that Congress would prefer that we use a scalpel rather than a bulldozer in curing the constitutional defect [in the removal restriction]."); <u>see also</u> <u>Decker Coal Co. v. Pehringer</u>, 8 F.4th 1123, 1137 (9th Cir. 2021) ("Here, the ALJ lawfully exercised power that he possessed by virtue of his appointment, which the Secretary ratified before the ALJ adjudicated the claim.  Absent a showing of harm, we refuse to unwind the decisions below.").

### d. Whether Plaintiff Sufficiently Establishes Compensable Harm to Entitle Him to the Requested Relief

The <u>Collins</u> court concluded the severability of the removal provision from the Act did not necessarily mean that a plaintiff had no entitlement to relief because it was still possible for the removal provision to inflict "compensable harm."  <u>Collins</u>, 141 S. Ct. at 1788–89.  However, the Supreme Court explained that, to establish "compensable harm," there must be a direct nexus to the separation of powers violation.[14]  <u>Collins</u>, 141 S. Ct. at 1788–89.  Accordingly, a claimant seeking relief must show that an unconstitutional removal restriction actually caused him harm.

In his reply brief, Plaintiff asserts his purported "injury" is threefold: (1) not receiving a constitutionally valid hearing and adjudication from an ALJ, (2) not receiving a constitutionally valid decision from an ALJ, and (3) receiving an unfavorable disability decision.  (ECF No. 20 at 4.)  Plaintiff proffers the reason the ALJ did not have a lawful delegation of authority under which to adjudicate his disability claim is because of the unconstitutional removal restriction, which rendered Commissioner Saul's delegation of power to the ALJs "defective."  (<u>Id.</u> at 5–6.)

---

[14] The Supreme Court provided two examples of instances in which compensable harm may be established: (1) where the President had attempted to remove an agency head "but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal"; or (2) where the President had expressed displeasure with actions taken by an agency head and had asserted that he would remove the agency head "if the statute did not stand in the way."  <u>Id.</u> at 1789.  While there is no indication that these examples were meant to be exhaustive, it is nevertheless worth observing that Defendant noted Plaintiff cites no facts indicating President Biden wanted to remove, but was prevented from removing, Commissioner Saul before his claim was decided, or that, but for the removal restriction, Plaintiff's claim would have been decided differently.  (<u>See</u> ECF No. 19 at 18.)  Plaintiff addresses this issue, for the first time, on reply, in which he asserts, "Clearly, President Biden believes that the disability adjudication process and due process protections were lacking under Mr. Saul's SSA," and alludes to President Biden's "wishes" that Mr. Saul step down (<u>see</u> ECF No. 20 at 8, 11); however, Plaintiff does not elaborate on this assertion or cite to any evidentiary support for these statements.  And, as the Court has noted, Plaintiff points to no competent evidence that there was any attempt by the President to remove Mr. Saul.

1  Finally, the relief Plaintiff seeks is remand of his disability claim for a hearing and decision from

2  a new ALJ.[15]

3      However, to the extent that he contends any and all actions—including delegating

4  authority to the ALJs to decide disability claims—exceeded Commissioner Saul's authority based

5  solely on the unconstitutionality of the removal restriction, Plaintiff's contention is squarely at

6  odds with the Supreme Court's finding that the removal restriction is severable from the

7  remainder of the Act (as previously discussed).  Collins, 141 S. Ct. at 1787–89, n.24; Seila Law,

8  140 S. Ct. at 2192, 2208–11.

9      Furthermore, Plaintiff has not presented any facts indicating the removal restriction

10  impacted the SSA's operations or that anyone involved in adjudicating his disability claim at the

11  SSA lacked the authority to do so.  Thus, Plaintiff's purported injury cannot merely be "the

12  unconstitutionality of Commissioner Saul's appointment due to the removal restriction," but must

13  be traceable to some unlawful act by Defendant.  See Collins, 141 S. Ct. at 1788, n.23 ("As we

14  have explained, there is no basis for concluding that any head of the FHFA lacked the authority to

15  carry out the functions of the office … Settled precedent also confirms that the unlawfulness of

16  the removal provision does not strip the Director of the power to undertake the other

17  responsibilities of his office, including implementing the third amendment.") (citation omitted).

18  Similarly, Plaintiff has not established that he did not "not receiv[e] a constitutionally valid

19  hearing and adjudication" or "decision from an ALJ," due to Commissioner Saul's lack of

20  authority based solely on the unconstitutionality of the removal restriction.  See id.  Thus, the

21

22  [15] Plaintiff claims he is entitled to relief pursuant to a purported "three part analysis to determine whether a litigant aggrieved by [a separation of powers] violation is … entitled to any relief."  (ECF No. 20 at 2.)  Plaintiff identifies

23  these prongs as: (1) whether the party has standing to raise the separation of powers challenge; (2) whether the statutory removal protection violates the separation of powers; and (3) whether Plaintiff is "entitled to any remedy for SSA's violation of his constitutional rights."  (Id. at 3–4.)  This is an inaccurate reading of Collins.  (Importantly,

24  none of the prongs identified by Plaintiff appear to address whether a party suffered compensable harm, but instead presuppose the party is aggrieved.)  Contrary to what Plaintiff appears to suggest, the Supreme Court considered

25  Article III standing first, before it reached either the constitutional question or the issue of relief on their merits. Determining the constitutionality of the removal protection, similarly, was determined before the consideration of

26  whether the party is aggrieved and therefore entitled to relief may be reached.  Finally, Plaintiff's third purported prong presupposes the party's constitutional rights have been violated (i.e., that he is an "aggrieved party"), which is

27  a distinct question from whether the removal protection is unconstitutional.  Importantly, the Collins court neither set forth a test for determining whether the claimant has suffered "compensable harm," nor did it decide that final issue

28  with respect to the federal parties in that case; instead, the Supreme Court remanded the case to the lower courts to determine whether any compensable harm had occurred.  See Collins, 141 S. Ct. at 1789.

Case 1:21-cv-01527-SAB   Document 21   Filed 01/31/23   Page 42 of 45

only cognizable injury Plaintiff appears to identify is his unfavorable disability decision, and it is this injury that must be tied to Defendant's wrongful act/s.

As to his unfavorable disability decision, Plaintiff has not shown any connection between the denial of benefits and the unconstitutional removal provision.  Indeed, there is no allegation even suggesting a direct nexus between the adjudication of Plaintiff's disability claim by the SSA and the alleged separation of powers violation in the removal statute that applies to the Commissioner.  At most, Plaintiff merely alleges he was injured because he "received an unfavorable decision from [a] constitutionally illicit ALJ adjudication process."  (ECF No. 20 at 4.)  But this allegation does not trace the decision by the ALJ in the instant case to any alleged injurious conduct by the SSA Commissioner.  See Collins, 141 S. Ct. at 1779 ("plaintiff must show that it has suffered an 'injury in fact' that is 'fairly traceable' to the defendant's conduct and would likely be 'redressed by a favorable decision.' ").  Thus, Plaintiff identifies no actual harm suffered by virtue of his claim being adjudicated during Commissioner Saul's tenure.  See id. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone....  When an agency decision would not capture a President's attention, his removal authority could not make a difference.").  And, while the Ninth Circuit has not yet ruled on this issue, the Court notes there is significant caselaw arising from Ninth Circuit district courts—including the Eastern District of California—in which the courts similarly declined to set aside a negative social security determination solely on the basis of Commissioner Saul's unconstitutional tenure protection.[16]

---

[16] See, e.g., Ramos v. Comm'r of Soc. Sec., No. 1:20-cv-01606-EPG, 2022 WL 105108, at *4 (E.D. Cal. Jan. 11, 2022); Rivera-Herrera v. Kijakazi, No. 1:20-cv-01326-GSA, 2021 WL 5450230, at *7 (E.D. Cal. Nov. 22, 2021); Frank W. v. Kijakazi, No. 20cv1439-KSC, 2021 WL 5505883, at *4 (S.D. Cal. Nov. 24, 2021) ("Here, there is no allegation even suggesting a direct nexus between the adjudication of plaintiff's disability claim by the SSA and the alleged separation of powers violation in the removal statute that applies to the Commissioner."); Twila D. B. v. Kijakazi, No. 2:20-cv-06304-AFM, 2022 WL 425936, at *3 (C.D. Cal. Feb. 10, 2022) (denying new hearing because claimant "failed to show any connection between the unconstitutional removal clause and [the ALJ's] decision denying her benefits. Further, nothing in the record supports the conclusion that the disability decision in [the claimant's] case is in anyway traceable to Commissioner Saul."); Sean E. M. v. Kijakazi, No. 20-cv-07295-SK, 2022 WL 267406, at *5 (N.D. Cal. Jan. 28, 2022) (because plaintiff failed to show connection between the unconstitutional removal provision and denial of benefits, he was not entitled to new hearing based upon constitutional challenge); Lisa Y. v. Comm'r of Soc. Sec., No. C21-5207-BAT, 2021 WL 5177363, at *5, *8 (W.D. Wash. Nov. 8, 2021) (finding "there is nothing showing the Commissioner or the SSA implemented new and relevant agency action that may have turned upon the President's inability to remove the Commissioner," therefore, § 902(a)(3)'s removal clause did not harm the claimant; and stating, "Reversal is not mandated under Seila Law or Collins because § 902(a)(3)'s

Finally, the Court turns to Defendant's ratification argument.  The Supreme Court indicated in <u>Collins</u> that, if an Acting Director who was removable at will ratified the former Director's at-issue actions, and if the alleged harm incurred by the claimant had been completed by the time of the ratification, then any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed the claimant, and he would not be entitled to any relief.[17]  <u>Collins</u>, 141 S. Ct. at 1781.  Furthermore, the Supreme Court stated that, "if the statute does not restrict the removal of an Acting Director, any harm resulting from actions taken under an Acting Director would not be attributable to a constitutional violation."  <u>Id.</u>  Here, Defendant argues that Mr. Saul's actions were ultimately ratified by Acting Commissioner Kilolo Kijakazi, whom President Biden appointed on July 9, 2021, to replace Commissioner Saul, and that the Appeals Council denied Plaintiff's request for review on August 17, 2021 (making the ALJ's decision the final decision of the Commissioner), during the tenure of Acting Commissioner Kijakazi.  (ECF No. 19 at 18; <u>see also</u> AR 1–7.)  Thus, Defendant argues Acting Commissioner Kijakazi ratified the denial of Plaintiff's disability claim, precluding Plaintiff from any further relief on the constitutional claim.  In light of the Supreme Court's reasoning in <u>Collins</u>, the Court finds Defendant's argument persuasive.

---

removal clause is severable, and because there is no possibility § 902(a)(3)'s removal clause harmed [the claimant]."); <u>Carla D. v. Kijakazi</u>, No. 2:20-CV-00361-LRS, 2022 WL 264460, at *2 (E.D. Wash. Jan. 27, 2022) ("even if the Commissioner at the time of the ALJ's appointment was subject to 42 U.S.C. § 902(a)(3), Plaintiff cannot show that the removal restriction caused the denial of her application for benefits."); <u>Brinkman v. Kijakazi</u>, No. 2:21-cv-00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("In this case, unlike <u>Seila Law</u>, Plaintiff does not allege facts that support a finding that her injury, the denial of disability benefits, can be or is traced to the conduct of the SSA Commissioner."); <u>Amanda B. v. Comm'r of Soc. Sec.</u>, No. 3:20-CV-00434-BR, 2021 WL 4993944, at *9 (D. Or. Oct. 26, 2021) (same); <u>Nudelman v. Comm'r of Soc. Sec. Admin.</u>, No. CV-20-08301-PCT-MTL, 2022 WL 101213, at *13 (D. Ariz. Jan. 11, 2022) (rejecting claimant's argument where he "fails to point out which, if any, defective regulations were promulgated in this case, how they applied to his claim, and how they affected the outcome such that he suffered a compensable harm … A broadly construed but-for causal chain is insufficient.") (citation omitted).

[17] In <u>Collins</u>, the federal parties argued the shareholders' constitutional challenge was dead on arrival because the at-issue third amendment was adopted when the FHFA was led by an Acting Director who was removable by the President at will.  <u>Collins</u>, 141 S. Ct. at 1781.  The Supreme Court rejected this argument, however, on the basis that the harm of the third amendment was ongoing and thus did not come to an end during the tenure of the Acting Director who was in office when the amendment was adopted, stating, "[t]his argument would have merit if (a) the Acting Director was indeed removable at will … and (b) all the harm allegedly incurred by the shareholders had been completed at the time of the third amendment's adoption.  Under those circumstances, any constitutional defect in the provision restricting the removal of a confirmed Director would not have harmed the shareholders, and they would not be entitled to any relief."  <u>Id.</u>

In reply, Plaintiff does not dispute the facts set forth by Defendant regarding Acting Commissioner Kijakazi's tenure and the final decision date of his disability claim; moreover, Plaintiff acknowledges the ALJ was properly appointed three years ago and does not challenge the appointments.  (ECF No. 20 at 4–5.)  Instead, Plaintiff argues that the fact the ALJ was appointed by Acting Commissioner Kijakazi is irrelevant to the issue of the purported unconstitutional delegation of authority because the instant appeal "is not an Appointments Clause challenge," but a challenge to the delegation of authority by Mr. Saul, under which the ALJ adjudicated and decided Plaintiff's disability claim.  (Id.)  In sum, Plaintiff rehashes his position that, because of the unconstitutional removal restriction, Mr. Saul's tenure was unconstitutional and his actions—including the delegation of authority to ALJs to adjudicate claims—exceeded his authority.  Again, this argument runs afoul of the Supreme Court's finding that the removal restriction is severable from the reminder of the Act; therefore, where, as here, the agency head was properly appointed, "the unlawfulness of the removal provision does not strip [Mr. Saul] of the power to undertake the other responsibilities of his office," and there is "no reason to regard any of the actions taken by the [SSA] ... as void."  Collins, 141 S. Ct. at 1787–88, n.23.  Plaintiff's arguments are therefore unavailing.

Plaintiff cannot show any connection between the unconstitutional limit on Commissioner Saul's removal and the ALJ's decision denying him benefits.  See Decker Coal Co., 8 F.4th at 1138 (regarding appeal of Benefits Review Board order affirming a Dept. of Labor ALJ's decision, "[T]here is no link between the ALJ's decision awarding benefits and the allegedly unconstitutional removal provisions.  And nothing commands us to vacate the decisions below on that ground.").  Thus, Plaintiff's constitutional violation claim fails for lack of standing.  Accordingly, even if the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.       Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF

No. 17) is DENIED; and

2.     The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Timothy Daniel and close this case.

IT IS SO ORDERED.

Dated:   **January 30, 2023**

_____
UNITED STATES MAGISTRATE JUDGE